# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:  SANDIA RESORTS, INC.,                                    No. 11-15-11532 JA

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Sandia Resorts, Inc.'s Motion for Reconsideration of, to Amend and/or to Set Aside Order Granting First National Bank of Santa Fe's Motion to Dismiss, or, in the Alternative for New Trial ("Motion for Reconsideration"). *See* Docket No. 54. Also before the Court are the following related motions: 1) Sandia Resorts, Inc.'s Request that its Motion to Reconsider be Summarily Granted, as No Objection Filed by any Party in Interest; and Reply to Response of First National Bank if Bank's Response is to be Considered by the Court ("Motion to Grant Motion for Reconsideration by Default") (Docket No. 57); 2) Motion for Substitution of NCG, LLC for First National Bank of Santa Fe ("Motion to Substitute NCG, LLC") (Docket No. 66); and 3) Debtor's Motion to Strike (1) NCG's Motion for Substitution [Doc. 66]; NCG's Notice of Ratification and Joinder [Doc. 65]; Memorandum Brief on Threshold Issues [Doc. 64] (To Extent NCG is a Movant); and (4) Motion to Correct Stipulated Facts & Opposition to Debtor's Motion to Correct [Doc. 61, 62] (To Extent NCG is a Movant and/or NCG is Opposing Debtor's Motion ("Motion to Strike") (Docket No. 69).

The common issue underlying all these pending motions is First National Bank of Santa Fe's standing. Because the Court finds that First National Bank of Santa Fe is not the real party in interest and lacked standing to file the motion to dismiss Sandia Resorts, Inc.'s Chapter 11 bankruptcy case, the Court will grant the Motion for Reconsideration and set aside its order dismissing Sandia Resorts, Inc.'s Chapter 11 bankruptcy case. The Court will deny the Motion to Substitute NCG, LLC, and deny as moot Sandia Resorts' Motion to Grant Motion for Reconsideration by Default and Motion to Strike.

PROCEDURAL HISTORY

Sandia Resorts, Inc. ("Sandia Resorts") initiated this bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on June 9, 2015. *See* Docket No. 1. Before the commencement of the bankruptcy case, First National Bank of Santa Fe ("FNBSF") initiated a foreclosure action against Sandia Resorts in state court (the "Foreclosure Action"), and, as part of the Foreclosure Action, obtained an order appointing a receiver to operate Sandia Resorts' America's Best Value Inn.

On June 17, 2015, "First National Bank of Santa Fe, creditor herein" filed a Motion for Dismissal of Case Pursuant to 11 U.S.C. § 305(a)(1) and/or 11 U.S.C. 1112(b)(2)(B) ("Motion to Dismiss"). *See* Docket No. 9. FNBSF also filed a Motion for Interim Relief Pursuant to 11 U.S.C. § 543(D) from Turnover of Property and/or for Dismissal of Case Pursuant to 11 U.S.C. § 305(a)(1) and/or 11 U.S.C. 1112(b)(2)(B) ("Motion to Excuse Turnover"). *See* Docket No. 7. Sandia Resorts filed an adversary proceeding against FNBSF and C. Randal Lewis, Western Receiver, Trustee and Consulting Services Ltd. seeking, among other things, turnover of all assets in the receiver's possession (the "Turnover Action"). *See* Adversary Proceeding No. 15-1067 J. The Court held a full-day trial on the merits of the Motion to Dismiss, the Motion to Excuse Turnover, and the Turnover Action on November 24, 2015.[1] NCG, LLC ("NCG") filed a proof of claim in Sandia Resorts' bankruptcy case on January 1, 2016. *See* Claims Register, # 9-1.

---

[1] Several factors contributed to the amount of time between the filing of and hearing on the Motion to Dismiss. FNBSF gave notice of a 21-day period to object to the motion, instead of the 10-day period permitted by NM LBR 1017-1. *See* Docket No. 10. FNBSF and Sandia Resorts agreed to a discovery period ending November 9, 2015 incorporated into a Scheduling Order entered August 28, 2015 that applied to the Motion to Dismiss and FNBSF's Motion to Excuse Turnover. *See* Docket No. 26.

The Court entered its Memorandum Opinion on the Motion to Dismiss and Motion to Excuse Turnover on February 5, 2016. *See* Docket No. 49. The Court determined that Sandia Resorts' filed this bankruptcy case for the purpose of restructuring the same debt to FNBSF that it had restructured in a previous Chapter 11 bankruptcy case, constituting an impermissible attempt to circumvent the Bankruptcy Code's prohibition against post-substantial consummation modifications. *Id.* The Court consequently granted the Motion to Dismiss, denied the Motion to Excuse Turnover as moot, and dismissed the Turnover Action. *See* Docket No. 51, Docket No. 50, and Adversary Proceeding No. 15-1067 J, Docket No. 29.

Sandia Resorts filed the Motion for Reconsideration on February 19, 2016, within fourteen days of the date of entry of the Memorandum Opinion and Order Granting Motion to Dismiss Chapter 11 Case ("Dismissal Order"). *See* Docket No. 54. The Court heard oral argument on the Motion for Reconsideration on March 17, 2016, after which the Court set a briefing schedule on the following threshold issues:

> a) Whether FNBSF had standing or the right to file the motion to dismiss the bankruptcy case, and if not whether the Court has the authority to dismiss the case sua sponte; and
>
> b) Whether the Court should grant Sandia Resorts' Motion for Reconsideration by default because FNBSF had no standing or the right to object to Sandia Resorts' Motion for Reconsideration.

*See* Order Setting Briefing Schedule and Identifying Stipulated Facts Established for Purposes of Ruling on the Debtor's Motion for Reconsideration ("Order") – Docket No. 59.

Subsequently, NCG filed a Federal Rule 17(a)(3) Notice of Ratification and Joinder purporting to ratify and join in all of the pleadings filed and actions taken by FNBSF in Sandia Resorts' bankruptcy case, and agreeing to be bound by FNBSF's pleadings and actions for res judicata purposes. *See* Docket No. 65. NGC also sought to substitute for FNBSF as a party. *See* Docket No. 66.

FACTS

The parties agreed that the Court should decide the Motion for Reconsideration on stipulated facts without an evidentiary hearing. The following facts[2] are established for purposes of ruling on the Motion for Reconsideration:

1. On or about February 13, 2004, Sandia Resorts borrowed $1,950,000 from FNBSF (the "Loan"). The Loan was evidenced by a promissory note dated February 13, 2004 and a renewal note dated July 1, 2009 (the "Notes"). To secure the Loan, Sandia Resorts executed a Line of Credit Mortgage ("Mortgage"), Assignment of Rents ("Assignment of Rents") and Commercial Security Agreement ("Security Agreement"), each dated February 13, 2004. In connection with the Loan, FNBSF and Sandia Resorts executed a Business Loan Agreement, dated February 13, 2004 ("Loan Agreement"). The documents identified in this paragraph collectively are called the "Loan Documents."

2. FNBSF initiated the Foreclosure Action against Sandia Resorts in state court. Before the state court decided a motion for summary judgment that FNBSF filed in the Foreclosure Action, Sandia Resorts commenced this this voluntary Chapter 11 bankruptcy case on June 9, 2016.

3. Pursuant to a Loan Sale Agreement, dated October 30, 2014 (the "Loan Sale Agreement"), on or about January 5, 2015 FNBSF sold the Loan to NCG. NCG is unaffiliated with FNBSF. In connection with the sale of the Loan, on January 5, 2015 FNBSF executed an Assignment of Real Estate and Loan Interests, which by its terms assigned FNBSF's interest in the Mortgage, as later modified, the Assignment of Rents, the Security Agreement, the Loan Agreement, and in a UCC financing statement to NCG. *See* Exhibits 2 and 3. On or about January 5, 2015, FNBSF endorsed the Notes "PAY TO THE ORDER OF: NCG, LLC, a New Mexico Limited Liability Company."

4. The Assignment of Real Estate and Loan Interests was recorded in the real property records of Bernalillo County, New Mexico on January 7, 2015 and again on January 5, 2016.

---

[2] The Order identified certain stipulated facts established for purposes of ruling on the Motion for Reconsideration, and provided the parties an opportunity to object to the accuracy of the stipulated facts. *See* Docket No. 59. FNBSF and Sandia Resorts each filed a motion to correct inaccuracies in the stipulated facts (Docket Nos. 61 and 62). As a result, the Court entered an Order Amending and Correcting Certain Stipulated Facts Established for Purposes of Ruling on Debtor's Motion for Reconsideration ("Amended Order"). *See* Docket No. 68. The Amended Order is the source of the stipulated facts set forth in paragraph 1 through 10 this Memorandum Opinion.

5. NCG paid FNBSF the purchase price for the Loan in January 2015. FNBSF no longer owned the Loan after January 5, 2015.

6. FNBSF agreed to continue to prosecute the Foreclosure Action in its own name on behalf of NCG after January 2015.

7. Richard Leverick served as counsel for FNBSF in the Foreclosure Action and in this bankruptcy case. He also served as counsel for NCG in this bankruptcy case.

8. Mr. Leverick reported to NCG in connection with the legal service he provided to his clients in connection with this bankruptcy case, and was paid by NCG for those legal services.

9. FNBSF endorsed the Notes to NCG in January 2015. Mr. Leverick was in possession of the original Notes from at least January 5, 2015 until he delivered the Notes to NCG on or about January 4, 2016.

10. On January 5, 2016, NCG filed a proof of claim in this bankruptcy case disclosing that it acquired the Loan from FNBSF. Mr. Leverick executed the proof of claim on behalf of NCG.

11. The Loan Sale Agreement, provides in relevant part:[3]

**Closing and Transfer Date.** Transfer of the Loan Documents from Bank to Buyer shall occur (the "Closing") not later than 12 noon MT, January 5, 2015. The date on which the Closing occurs shall be the "Transfer Date."

**Assignment of Loan Documents.** Effective as of the Transfer Date, Bank sells, transfers and assigns to Buyer, and Buyer buys and receives from Bank, all of Bank's right, title and interest in and to the Loan Documents, and all interest accrued and unpaid thereunder as of the Transfer Date.

**Litigation.** . . . . "Litigation Matters" shall mean all matters pending in any forum that are related to or arose out of or as the result of the Loan including, but not limited to, all arbitrations, mediations, judicial or non-judicial foreclosures

---

[3] In connection with the briefing on the Motion for Reconsideration, and by stipulation of the parties, FNBSF and NCG provided a complete copy of the Loan Sale Agreement to the Court and to counsel for Sandia Resorts, subject to public restriction from access, and subject to non-disclosure by Sandia Resorts' principal, Harminder Sian, of the Loan Sale Agreement or its terms to any third parties, absent further Court order. *See* Stipulated Order Restricting Access to Loan Sale Agreement and Protective Order ("Protective Order") – Docket No. 63. The Loan Sale Agreement was admitted in evidence. As part of its response to the Motion for Reconsideration, FNBSF filed of record without any restriction from public view a portion of the language in the "Litigation" paragraph quoted above. *See* Docket No. 56, p. 20. The Court has determined that the additional language from the Loan Sale Agreement quoted above is relevant to the Court's ruling on the Motion for Reconsideration, is not of a confidential nature, and should be disclosed in this Memorandum Opinion notwithstanding the Protective Order.

and judicial proceedings in any local, county, state or federal court (including any bankruptcy courts) whether or not Bank is a party to or has or has not entered a notice of appearance in such matters, provided, however, that Bank at Bank['s] option and in Bank's sole discretion, may retain or defend any counterclaims or direct claims that exist or are subsequently brought against or which name Bank and if Bank retains any such claims, Bank shall be entitled to be represented by any firm previously retained by Bank to handle any assigned litigation and if such representation creates a conflict of interest, Buyer shall waive such conflict and seek representation by another firm. Buyer acknowledges that the Bank, by its counsel filed a Complaint for Foreclosure in the Second Judicial District Court, Bernalillo County, New Mexico, assigned Case No. D-202-CV-2011-06528 (the "Case"). The Bank waives any objection to Leverick & Musselman, LLC serving as counsel to Buyer in the Case and any related Litigation Matters, once closing occurs, subject to the provisions of this paragraph.

12. Nirbhal "Gary" Grewel is the sole member and manager of NCG. He caused NCG to enter into the Loan Sale Agreement in October of 2014 to buy the Loan. As part of the loan purchase negotiations, he asked FNBSF to complete the Foreclosure Action to obtain a judgment of foreclosure, at which time NCG was to be substituted as plaintiff and would complete the foreclosure. *See* Grewel Affidavit, ¶¶ 1, 6, and 7. Docket No. 63, pp. 19-20.

## DISCUSSION

A. *The applicable standards for considering a motion for reconsideration*

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure technically recognize motions "for reconsideration." *See Hatfield v. Board of Cnty. Comm'rs for Converse Cnty.,* 52 F.3d 858, 861 (10th Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.'") (citing *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991)). The timing of the motion generally determines whether a motion requesting the Court to reconsider a judgment or order will be considered under Fed.R.Civ.P. 59 or Fed.R.Civ.P. 60. *See Hatfield,* 52 F.3d at 861 (explaining that "if the motion is filed within ten days [currently 14 for bankruptcy matters] of the . . . entry of judgment, the motion is treated as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e)" and that,

"[a]lternatively, if the motion is filed more than ten [currently 14] days after the entry of judgment, it is considered as a motion seeking relief from the judgment under Fed.R.Civ.P. 60(b).") (citation omitted).

A motion for reconsideration filed within fourteen days of the date of the entry of the order or judgment is treated as a motion to alter or amend governed by Fed.R.Civ.P. 59, made applicable to bankruptcy cases by Fed.R.Bankr.P. 9023. *See Dalton v. First Interstate Bank of Denver,* 863 F.2d 702, 703 (10th Cir. 1988) (explaining that "post-judgment motions filed within ten days [currently 14 days for bankruptcy matters] of the final judgment should, where possible, be construed as Rule 59(e) motions"), *superseded by statute on other grounds as stated in Grantham v. Ohio Cas. Co.,* 97 F3d 434, 435 (10th Cir. 1996). Grounds sufficient to grant relief under Rule 59(e) include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted).

A motion seeking relief from the entry of a final order or judgment is governed by Fed.R.Civ.P. 60, made applicable to bankruptcy case by Fed.R.Bankr.P. 9024. Subsection (b) of Rule 60 enumerates six grounds for relief, including "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). "Rule 60(b)(6) has been described [by the Tenth Circuit] . . . as a grand reservoir of equitable power to do justice in a particular case." *Van Skiver v. United States,* 952 F.2d 1241, 1244 (10th Cir. 1991) (internal quotation marks and citations omitted). However, relief under Rule 60(b)(6) is generally only available under extraordinary circumstances,[4] and a

---

[4] *See Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (cautioning that Rule 60(b)(6) "should only be applied in 'extraordinary circumstances.'") (quoting *Ackerman v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)); *Zurich North America v. Matrix Serv., Inc.,* 426 F.3d 1281, 1293 (10th Cir. 2005) ("Rule 60(b)(6) relief is even more difficult to attain and is appropriate only when it offends justice to deny such relief.") (quotation marks and citations omitted).

party may not rely on this catch-all provision if the relief requested falls within Rule 60(b)'s other enumerated grounds for relief.[5] Nevertheless, similar to Rule 59(e)'s justification for relief to prevent manifest injustice, Rule 60(b)(6) enables the Court "'to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg,* 486 U.S. at 863 (quoting *Klaprott v. United States,* 335 U.S. 601, 614-15, 69 S.Ct. 384, 93 L.Ed. 266 (1949)).

Sandia Resorts complains that it did not discover that NCG had acquired the Notes and Mortgage from FNBSF and was assignee under the Assignment of Rents and Security Agreement until after the entry of the Dismissal Order. It argues further that because NCG had acquired the Notes, Mortgage and Assignment of Rents and Security Agreement before Sandia Resorts filed this bankruptcy case, FNBSF lacked standing and was not the proper party to file and prosecute the Motion to Dismiss. As discussed below, this Court agrees, and finds that the Dismissal Order must be set aside consistent with Rules 59(e) and 60(b)(6) to prevent manifest injustice.

      B.     *NCG Became the Owner of the Loan on or about January 5, 2015*

FNBSF filed the Motion to Dismiss on June 17, 2015. The final hearing on the motion concluded on November 24, 2015. FNBSF asserts that NCG did not own the Loan until at least January 4, 2016 when Mr. Leverick delivered physical possession of the loan documents to NCG, well after FNBSF filed the Motion to Dismiss. FNBSF points out that, under the New Mexico Uniform Commercial Code, the holder of a negotiable instrument includes a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession," N.M.S.A. 1978 § 55-1-201(b)(21)(A), and that "if an

---

[5] *Pioneer Inv. Services Co. v. Brunswick Associates, Ltd. P'ship,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (stating that Rule 60(b)'s "provisions are mutually exclusive."); *United States v. Buck,* 281 F.3d 1336, 1341 (10th Cir. 2002) ("The clear import of the language of clause (b)(6) is that the clause is restricted to reasons other than those enumerated in the previous five clauses.") (citations omitted).

-8-

instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." N.M.S.A. 1978 § 55-3-201(b). Based on these statutes, FNBSF seems to suggest that because Mr. Leverick remained in possession of the Notes and Loan Documents until they were delivered to NCG in January of 2016, the transfer of the Loan was not completed until that time such that FNBSF retained an interest sufficient to file the Motion to Dismiss. This Court disagrees. For the reasons explained below, the Court concludes that NCG acquired the Loan and the transfer was completed before Sandia Resorts filed its Chapter 11 bankruptcy case such that FNBSF had no interest in the Loan at the time it filed the Motion to Dismiss.

The closing date and transfer date under the Loan Sale Agreement occurred on January 5, 2015. The Loan Sale Agreement defines "Closing" as "not later than 12 noon MT, January 5, 2015," and defines the "Transfer Date" as "[t]he date on which the closing occurs." The Loan Sale Agreement further confirms that the transfer of FNBSF's interest in the Loan is effective as of the Transfer Date. It provides:

> Effective as of the Transfer Date, Bank sells, transfers and assigns to Buyer, and Buyer buys and receives from Bank, all of Bank's right, title and interest in and to the Loan Documents and all interest accrued and unpaid thereunder as of the Transfer Date.

The Assignment of Real Estate and Loan Interests, dated January 5, 2015, was recorded in the real Property records of Bernalillo County, New Mexico on the same day. That Assignment provides, in relevant part:

> For value received, the undersigned, The First National Bank of Santa Fe, N.A., a national banking association . . . .
>
> does hereby transfer and assign said mortgage, modification of mortgage, assignment of rents, commercial security agreement business loan agreement and UCC financing Statement and the obligations secured thereby to: NCG LLC, a New Mexico limited liability company[.]

Assignment of Real Estate and Loan Interests.

This language uses the present tense, and includes a transfer of the "obligations secured thereby," i.e., obligations under the Notes. As a result, FNBSF had no interest in the Loan after January 5, 2015. In addition, during the bankruptcy case, Mr. Leverick who had physical possession of the Loan Documents, including the Notes, reported to NCG and was paid by NCG (not FNBSF) with respect to the legal services he rendered during and in connection with this bankruptcy case. In sum, FNBSF had no interest in the Loan at the time it filed the Motion to Dismiss.

      C.     *FNBSF was not acting as agent NCB in filing and prosecuting the Motion to Dismiss.*

FNBSF also asserts that its filing and prosecution of the Motion to Dismiss is similar to that of a servicer filing a foreclosure action on behalf of the mortgage holder.[6] This argument is likewise unavailing. To satisfy the real party in interest and standing requirement to seek relief in a bankruptcy case based on an agency relationship between the owner of a loan and the loan servicer, the loan servicer must establish that it has the authority from its principal to seek such relief. *See In re Alcide,* 450 B.R. 526, 539 (Bankr.E.D.Pa. 2011) (requiring mortgage servicer to demonstrate that "the initiation of the stay relief motion in the bankruptcy court is within the scope of authority delegated to the servicer by its principal").[7]

FNBSF filed the Motion to Dismiss in the name of "First National Bank of Santa Fe, creditor herein" when, in fact, it was no longer a creditor. A creditor is an entity that holds a claim against the bankruptcy estate. 11 U.S.C. §101(10)(B). *See also* 11 U.S.C. §101(5)(A)

---

[6] FNBSF cites *Neal v. Residential Credit Solutions, Inc.,* 2013 WL 428675 (D.Md. Feb. 1, 2013) (rejecting argument that mortgage servicer was not entitled to sue on the note). *See also In re Lippold,* 457 B.R. 293, 299 n.1 (Bankr.S.D.N.Y. 2011) (noting that "a mortgage servicer has standing to seek relief from the automatic stay, presuming, however, that the servicer is acting on behalf of a lender that has standing to seek stay relief.") (citations omitted).
[7] *See also In re Jacobson,* 402 B.R. 359, 367 (Bankr.W.D.Wash. 2009) ("Foreclosure agents and servicers do not automatically have standing, and must show authority to act for the party which does.") (internal citations omitted).

-10-

(defining the term "claim" as the "right to payment"). When it filed the Motion to Dismiss, FNBSF did not hold a claim against Sandia Resorts' bankruptcy estate. NCG held the claim.

In addition, the stipulated facts do not establish that FNBSF acted as an agent for NCG within the scope of its authority in filing and prosecuting the Motion to Dismiss. The Loan Sale Agreement does not create such an agency relationship. The section of the Loan Sale Agreement addressing "Litigation Matters" does not give FNBSF authority to initiate and prosecute an action on behalf of NCG that does not affect FNBSF's interests. The Loan Sale Agreement gives FNBSF "sole discretion" to "retain . . . any direct claims." However, the issues raised by the Motion to Dismiss cannot be considered "retained direct claims" of FNBSF because FNBSF no longer held any interest in the Loan that it could assert as of the filing date of the Motion to Dismiss. The Grewel Affidavit only establishes that FNBSF agreed, separate from what it agreed to do in the Loan Sale Agreement, to complete the Foreclosure Action in state court to obtain a judgment of foreclosure, at which time NCG was to be substituted as plaintiff and would complete the foreclosure.

Although Mr. Leverick reported to and was paid by NCG for the legal services he provided in connection with the Motion to Dismiss, this fact alone does not establish that FNBSF was an agent for NCG acting within the scope of its authority in prosecuting the Motion to Dismiss. There is no evidence before the Court of an agency relationship between FNBSF and NCG that encompassed FNBSF filing and prosecuting the Motion to Dismiss as agent for NCG.

D. *NCG may not substitute for FNBSF under Fed.R.Civ.P. 17 as the real party in interest to prosecute the Motion to Dismiss*

Fed.R.Civ.P. 17, made applicable to contested matters in bankruptcy cases by Fed.R.Bankr.P. 9014, requires that all actions be "prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a)(1). In an effort to address Sandia Resorts' assertion that FNBSF is

-11-

not the real party in interest, on March 28, 2016 NCG filed a Notice of Ratification and Joinder, pursuant to Fed.R.Civ.P. 17(a)(3), giving "notice that it ratifies and joins [sic] all of the pleadings filed and actions taken in this case to date by First National Bank of Santa Fe, and agrees to be bound by such for res judicata purposes." Docket No. 65. Pursuant to Fed.R.Civ.P. 17(a)(3), if an action is not prosecuted by the real party in interest:

> The court may not dismiss an action . . . until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.
>
> Fed.R.Civ.P. 17(a)(3).

"Read literally, Rule 17(a) would appear to require that a party *always* be given a reasonable time to substitute the real party in interest where objection has been made." *Esposito v. United States,* 368 F.3d 1271, 1275 (10th Cir. 2004) (citation omitted) (emphasis in original). But [s]uch a literal reading . . . would countenance conduct in violation of the spirit of the Rules[.]" *Id.* However, under applicable Tenth Circuit precedent, NCG may not rely on Rule 17(a)(3) to address the failure to prosecute the Motion to Dismiss in the name of the real party in interest unless the filing of the motion by someone other than the real party in interest was the result of an honest mistake. *See Esposito,* 368 F.3d at 1276 (substitution of the real party in interest requires that the mistake be "honest").

In *Esposito,* a wrongful death action was improperly commenced in the name of the deceased instead of in the name of an heir who had sustained a loss by reason of the death as required under applicable law. The decedent's surviving wife sought to substitute as the plaintiff for the deceased under Rule 17(a). The Advisory Committee Notes to Rule 17 observe that "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed," and state further that Rule 17 "is

-12-

intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." (Fed.R.Civ.P. 17 Advisory Committee's Note (1996 Amendment)). Based on the Advisory Committee's Notes, the district court denied the request for substitution under Rule 17(a)(3), finding that, although failure to commence the suit in the name of the real party in interest was the result of an honest mistake, the mistake was not also understandable. *See Esposito,* 368 F.3d at 1276 (discussion district court's ruling).

The Tenth Circuit reversed, stating that, "[I]n this circuit . . . we have never required a plaintiff seeking substitution to show that his mistake was 'understandable' in addition to being 'honest.'" *Esposito,* 368 F.3d at 1276. Rather, the primary focus of Rule 17(a)(3)'s substitution requirements is "whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and . . . whether the defendant was prejudiced thereby." *Id.* (citing *Schueufler v. General Host Corp.,* 126 F.3d 1261, 1270 (10th Cir. 1997)). Thus, Tenth Circuit precedent permits the real party in interest to be substituted, ratify, or join under Rule 17(a)(3) only when commencement of the case by the wrong party was the result of an "honest mistake" and the defendant will not be prejudiced by the joinder.

Naming FNBSF as movant in the Motion to Dismiss was not the result of an honest mistake regarding the identity of the real party in interest. Mr. Leverick explained in oral argument why the Motion to Dismiss was filed and prosecuted in the name of FNBSF instead of NCG. He explained that Sandia Resorts' principal, Mr. Harminder Sian, had threatened to sue FNBSF several times in connection with the Loan for reasons devoid of merit, that NCG wanted to avoid being another target, and that the parties anticipated the Motion to Dismiss would be resolved quickly. Apparently toward this end, FNBSF identified itself as "creditor herein" both in the Motion to Dismiss and in the Motion to Excuse Turnover, and also stated in the Motion to

-13-

Excuse Turnover that it "holds a perfected interest and lien in and against the cash collateral of the Debtor generated at and from the operation of the hotel . . . ." *See* Docket Nos. 7 and 9. These statements were incorrect as a matter of law, and suggest that NCG intended for FNBSF to file the Motion to Dismiss so that Sandia Resorts might not know that NCG had acquired the Loan. Under these circumstances, the filing of the Motion to Dismiss by the wrong party was not an honest mistake, and NCG is not entitled to substitute for FNBSF as the real party in interest pursuant to Rule 17(a)(3).

      E.    *Rule 25 is inapplicable*

As the party who acquired the Notes, Mortgage and Assignment of Rents and Security Agreement, NCG also seeks to substitute for FNBSF in Sandia Resorts' bankruptcy case pursuant to Fed.R.Civ.P. 25(c), made applicable to contested matters in bankruptcy cases by Fed.R.Bankr.P. 9014. Rule 25(c) provides, in relevant part:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed.R.Civ.P. 25(c).

Rule 25(c) is inapplicable because it applies only when the action was commenced by the real party in interest. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* §1958 (If an interest has been transferred prior to commencement of the suit, Rule 17, requiring that an action be brought in the name of the real party in interest and defining capacity to sue and be sued, is controlling.") (3d ed. 2007). The Loan Documents were transferred to NCG before Sandia Resorts filed its bankruptcy case. FNBSF consequently had no interest in the Loan as of the date Sandia Resorts filed its bankruptcy case. As a result, FNBSF was not the proper party to file the Motion to Dismiss, and NCG could not "continue"

the Motion to Dismiss as transferee. Nor can NCG be substituted for FNBSF in the bankruptcy case because, as the Court concludes below, FNBSF lacked standing to file the Motion to Dismiss in the first instance.

> F.   *FNBSF lacked standing to file the Motion to Dismiss*

Standing takes three forms: constitutional standing, prudential standing, and statutory standing.[8] Constitutional standing requires an injury in fact, causation, and redressability.[9] Prudential standing is a judicial limitation on constitutional standing.[10] Statutory standing is present when a statute confers a private right of action on a particular class of persons consistent with the requirements of constitutional standing.[11] Central to the concept of standing is the requirement that, ordinarily, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citations omitted).[12]

---

[8] *See Wilderness Society v. Kane Cnty.,* 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (explaining that constitutional standing under Article III of the Constitution enforces the case-or-controversy requirement, and prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction") (internal quotation marks and citation omitted); *Carolina Cas. Ins. Co. v. Pinnacol Assur.,* 425 F.3d 921, 926 (10th Cir. 2005) ("Congress may extend the right to sue under a statute to any plaintiff that has constitutional standing. It may also, however, place additional restrictions on who can sue, imposing requirements of 'statutory standing.'") (citation omitted).

[9] *See Pinnacol,* 425 F.3d at 926 (constitutional standing requires plaintiff to "show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (quoting *Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.,* 528 U.S. 167, 180-01, 120 S.Ct. 693, 145 L.Ed.2d 510 (2000) (remaining citations omitted). *See also, Kane Cnty.,* 632 F.3d at 1168 (to satisfy the requirements of constitutional standing, "the plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress.") (internal quotation marks and citation omitted).

[10] *See Kane Cnty.,* 632 F.3d at 1168 ("prudential standing . . . embodies judicially imposed limits on the exercise of federal jurisdiction.") (internal quotation marks and citations omitted).

[11] *See Pinnacol,* 425 F.3d at 926 (explaining that "Congress may extend the right to sue under a statute to any plaintiff that has constitutional standing.").

[12] *See also, Kane Cnty.,* 632 F.3d at 1168 ("The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.") (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *Aid for Women v. Foulston,* 441 F.3d 1101, 1111 (10th Cir. 2006) (acknowledging that "'even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [for standing in federal court], . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (remaining citation omitted).

-15-

Challenges to a party's standing to participate in bankruptcy cases often relate the bankruptcy concept of "party in interest."  *See Alcide,* 450 B.R. at 534 (observing that "[w]hen a debtor challenges a creditor's status as a proper party to seek relief . . . courts have analyzed the controversy by reference to the concepts of constitutional standing, prudential standing, 'real party in interest (within the meaning of Fed.R.Civ.P. 17) and the bankruptcy concept of 'party in interest.'").  Under the Bankruptcy Code, a party in interest may appear and be heard on any issue in a Chapter 11 case.  11 U.S.C. § 1109.[13]  Whether a party has standing to be heard in a Chapter 11 bankruptcy case as a party in interest under 11 U.S.C. § 1109 depends on "'whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.'"  *In re Kaiser Steel Corp.,* 998 F.2d 783, 788 (10th Cir. 1993) (quoting *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir. 1985)).  Generally, if a party's "'pecuniary interests are, directly affected by the bankruptcy proceedings'" the party has standing as a party in interest under 11 U.S.C. § 1109.  *In re Alpex Computer Corp.,* 71 F.3d 353, 356 (10th Cir. 1995) (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir. 1993)).

The Court has concluded that that FNBSF, when it filed and prosecuted the Motion to Dismiss, had no interest in the Loan, would not benefit from payments being made under the Loan, and did not act in the capacity of an agent for the owner of the Loan, NCG.  As a result, FNBSF does not satisfy the injury in fact, causation, and redressability requirements for constitutional standing to prosecute the Motion to Dismiss in its own name and for its own account.  Nor does FNBSF have standing under the Bankruptcy Code as a party in interest because its pecuniary interests are unaffected by Sandia Resorts' bankruptcy case.

---

[13] Similarly, 11 U.S.C. § 1112(b), provides for dismissal or conversion "on request of a party in interest."  11 U.S.C. § 1112(b)

G. *The Court declines to address the issue of sua sponte dismissal under § 1112(b)*

The Court requested the parties to brief the issue of whether the Court may dismiss a Chapter 11 bankruptcy case on its own. There is case law to support such *sua sponte* authority to act.[14] But given the facts and circumstances present here, the Court declines to dismiss the bankruptcy case on its own motion even if it could. NCG will have an opportunity, should it choose to do so, to enter its appearance and file its own motion seeking to dismiss Sandia Resorts' Chapter 11 case.

## CONCLUSION

Based on the foregoing, the Court concludes that there is cause to set aside the Memorandum Opinion and Order under both Rule 59 and Rule 60 to prevent manifest injustice.

The Court will enter separate orders consistent with this Memorandum Opinion.

*/s/ Robert H. Jacobvitz*
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 26, 2016

---

[14] *See, e.g., Finney v. Smith (In re Finney),* 992 F.2d 43, 45 (4th Cir. 1993) ("A bankruptcy court may act under § 1112(b) on the motion of a party in interest or *sua sponte* as 'necessary and appropriate' under § 105.") (citation omitted); *In re Congoleum Corp.,* 414 B.R. 44, 60 (D.N.J. 2009) ("Under § 105(a), a court may convert or dismiss a case for cause *sua sponte*"); *In re Starmark Clinics, LP,* 388 B.R. 729, 736 (Bankr.S.D.Tex. 2008) (after the 2005 amendment to 11 U.S.C. § 1112(b) and the 1986 amendment to 11 U.S.C. § 105, the bankruptcy court has the power to dismiss a Chapter 11 case *sua* sponte); *But see, In re Gusam Restaurant Corp.,* 737 F.2d 274, 277 (2d Cir. 1984) (concluding "that the bankruptcy court was without power to convert *sua sponte* a Chapter 11 proceeding to a Chapter 7 case pursuant to section 1112(b)"); *In re Moog,* 774 F.2d 1073 (11th Cir. 1985) (decided before the amendment to 11 U.S.C. § 105, but determining that the bankruptcy court could not dismiss a Chapter 11 case *sua sponte* because of the explicit language in 11 U.S.C. § 1112(b) requiring request for dismissal or conversion by a party in interest).

COPY TO:

Shay E. Meagle
Attorney for Debtor
Meagle Law, P.A.
6500 Jefferson St. NE, Suite 260
Albuquerque, NM 87109

Joshua R. Simms
Attorney for Debtor
Joshua R. Simms PC
PO Box 50332
Albuquerque, NM 87181

Richard Leverick
Attorney for First National Bank and NCG, LLC
5120 San Francisco Rd NE
Albuquerque, NM 87109-4610