In re:   SANDIA RESORTS, INC.,                              No. 11-15-11532 JA

       Debtor.

## MEMORANDUM OPINION

Before the Court is the United States Trustee's ("UST") Amended Motion to Convert Chapter 11 Case to Chapter 7, or in the Alternative, Motion to Dismiss (Docket No. 308) (the "Motion"). The Debtor filed its Concurrence with and Response in Support of the Motion (Docket No. 318) ("Concurrence"). Creditors, Lawrence Castleman and Harminder Sian, filed Notices of Creditor's Preference for Dismissal Regarding Motion to Convert or Dismiss (Docket Nos. 319 and 320). Creditor, NCG, LLC ("NCG") filed its Opposition to the Motion (Docket No. 321) ("Objection"). The Court held a final, evidentiary hearing on the Motion and took the matter under advisement. In its closing argument, the UST stated that based on the amendments to NCG's offer to purchase assets of the estate, the UST does not object to the case being converted to a chapter 7 case.

Having considered the evidence in light of the applicable Bankruptcy Code sections and relevant case law, the Court concludes that the Motion should be granted and that this chapter 11 case should be converted to a case under chapter 7 of the Bankruptcy Code.

## Findings of Fact

A.    The Motion.

This is the second chapter 11 bankruptcy case the Debtor, Sandia Resorts, Inc., has filed. Debtor commenced this voluntary chapter 11 bankruptcy case on June 9, 2016. This has been a heavily litigated chapter 11 case. Debtor and NCG filed competing plans. Despite numerous

amendments and vigorous litigation, neither plan proponent was able satisfy § 1129(a)(10)'s[1] confirmation requirement for an impaired, accepting class of claims. *See* Order Resulting from Status Conference (Docket No. 304). Both Debtor and NCG stipulate that neither are able to confirm a plan in this chapter 11 case. In light of this fact, the UST filed the Motion pursuant to § 1112 requesting that the Court either dismiss this chapter 11 case or convert it to a case under chapter 7. The UST argued that cause exists under § 1112 for the Court to either convert or dismiss the case and that dismissal was in the best interest of the estate and its creditors. Debtor concurred with the UST on both issues.[2] NCG responded to the Motion also stipulating that cause exists for the Court to either convert or dismiss the case, but arguing that conversion, not dismissal, is in the best interest of the estate and its creditors.

B. The Hotel.

The Debtor owns and operates a hotel (the "Hotel") branded and doing business as America's Best Value Inn on its real property located at 5601 Alameda Blvd., N.E. near Alameda Blvd. and I-25 in Albuquerque, New Mexico (the "Real Property"). The term Real Property as used in this opinion includes the building where the Hotel is operated and all fixtures. The Hotel is Debtor's primary asset. NCG holds a note and mortgage secured by the Real Property, which it purchased from First National Bank of Santa Fe.

C. NCG's Offer.

NCG made an offer set forth in its Objection. The offer is made to any chapter 7 trustee appointed in the converted case if this Court converts this chapter 11 case to chapter 7. NCG

---

[1] Unless otherwise noted, all statutory references in this decision will be to the Bankruptcy Code, codified in Title 11 of the United States Code.

[2] In Debtor's Concurrence, Debtor asserts that the case should not be converted to chapter 7 if the Court decides not to dismiss. Debtor asserted, pursuant to § 112(b)(2), that unusual circumstances establish that converting the case is not in the best interest of creditors and the estate. Debtor specifically waived that argument at the outset of the final hearing.

-2-

amended the offer in open court. These are the terms and conditions of NCG's offer, as amended (the "Offer"):

1.      The offer is to any chapter 7 trustee appointed in the bankruptcy case (the "Chapter 7 Trustee") if the chapter 11 case is converted to chapter 7.

2.      The offer is irrevocable prior to acceptance or rejection of the offer by the Chapter 7 Trustee. If the Chapter 7 Trustee accepts the offer, it becomes a binding agreement subject to approval of the Bankruptcy Court.

3.      In exchange for the Chapter 7 Trustee's sale of the Assets (defined below) to NCG, NCG will pay $550,000 to the Chapter 7 Trustee in cash or a cash equivalent at closing, and in addition all of NCG's claims in the bankruptcy case would be deemed fully satisfied, including but not limited to its secured and unsecured claims (the "Purchase Price").

4.      The assets (the "Assets") to be sold by the Trustee to NCG would consist of all property of the bankruptcy estate except for certain excluded assets (the "Excluded Assets"). The property of the bankruptcy estate to be sold to NCG would include but not be limited to the Real Property, and all furniture, equipment, furnishings, case goods, claims against third parties (other than professional malpractice claims), and inventory that is property of the bankruptcy estate. The claims to be sold to NCG would include any and all claims by the Debtor against NCG, Nirbhai (Gary) Grewal, Peak Hospitality, and/or the receiver C. Randel Lewis and Western Receiver, Trustee & Consulting Services, Ltd.

-3-

5.      The Excluded Assets consist of all cash on hand or on deposit with any financial institution; any accounts receivable, including credit card receivables; and any professional malpractice claims.

6.      A Chapter 7 Trustee would pay from the sale proceeds all real and personal property taxes and City's Lodger's taxes owing by the Debtor, and all other taxes and claims that must be paid to deliver title to the Assets to NCG free and clear of all liens.

7.      A Chapter 7 Trustee would not be required to accept the Offer, and would have the right to seek competing offers for the estate assets.

8.      A Chapter 7 Trustee would have the right to decide whether to continue to operate the Hotel, subject to any required court approval.

9.      The conditions to NCG's obligation to purchase the Assets, if a Chapter 7 Trustee accepts the Offer, are:

(a)      The Assets would be sold free and clear of all liens and other interests under 11 U.S.C. § 363(f) pursuant to an order of the Bankruptcy Court;

(b)      Closing would occur by February 3, 2017 unless NCG agreed to extend the closing date; and

(c)      Main Bank must lend NCG $500,000 to fund that portion of the Purchase Price at closing.

There is a good prospect that NCG will have the ability to borrow $500,000 from Main Bank to fund $500,000 of the Purchase Price at closing and to close if the Chapter 7 Trustee accepts the offer and the Court approves the sale. NCG obtained a loan commitment from Main Bank in the amount of $500,000. The Chief Executive Officer of Main Bank signed the loan commitment on behalf of the bank and testified at the hearing. Main Bank regards the appraisal contingency in

-4-

the loan commitment as having been satisfied. The other contingencies in the loan commitment are the typical type of contingencies contained in loan commitments for commercial loans.

      D.     Property of the Estate.

Debtor scheduled the Real Property as having a value of $1.2 million. *See* Schedules, filed October 10, 2016; Docket No. 291. Debtor estimated the liquidation value of its furniture, fixtures, equipment and furnishings at $72,000, net of costs of sale. See the Liquidation Analysis attached to Debtor's Corrected Second Amended Disclosure Statement, filed August, 2, 2016. Docket No. 164. Debtor scheduled claims against Don Harris and/or Albuquerque Business Law P.C. for legal malpractice; and against NCG, First National Bank of Santa Fe, Peak Hospitality LLC, C. Randel Lewis and Western Receiver, Trustee & Consulting Services, Ltd. and /or their respective agents, affiliates and representatives, all in amounts listed as unknown. *Id.* Debtor asserts it has claims against NCG that relate to NCG secretly purchasing First National Bank of Santa Fe's loan to Debtor contrary to an agreement between Debtor and NCG that NCG would help Debtor refinance its debt owed to the bank. Debtor is likely to pursue the scheduled claim against NCG if the case is dismissed because Debtor's principal believes NCG double crossed him, and he would be more motivated to pursue the claim than a chapter 7 trustee.

      E.     Liabilities of the Estate.

NCG filed a proof of claim asserting a secured claim against the estate in the amount of $1,876,286.16, representing unpaid principal, interest, receiver advances, costs and fees. *See* Claim No. 10-1.

Unpaid administrative claims in this chapter 11 case, subject to allowance of such claims, appear to be approximately $95,000 to 100,000, which includes approximately $75,000 of unpaid professional fees, plus operating expenses incurred in November and December 2017 not yet paid

in the ordinary course of business. There are sufficient funds in Debtor's operating account to pay those operating expenses.

Unpaid real and personal property taxes appear to be approximately $260,000,[3] and unpaid Lodger's tax appears to be $18,362.26 per Proof of Claim No. 11 filed June 29, 2016.

The Internal Revenue Service filed a proof of claim in the amount of $8,211.38 as a secured claim, collateralized by all of Debtor's assets and a $981.46 priority unsecured claim. *See* Proof of Claim No. 1 filed June 15, 1015. The New Mexico Department of Taxation and Revenue filed a claim in the amount of $23,737.97 as a secured claim collateralized by all of Debtor's assets and an unsecured claim in the amount of $4,774.76.

Based on proofs of claim on file, and the Debtor's schedules, there appear to be approximately $365,000 to $400,000 of nonpriority, unsecured claims.

If a chapter 7 trustee accepts the Offer, this Court approves the sale, and the sale closes, it is likely the sale proceeds would be sufficient to pay all real and personal property taxes, all Lodger's taxes, all secured and priority unsecured claims held by the Internal Revues Service and New Mexico Department of Taxation and Revenue, all chapter 7 administrative expenses, all unpaid chapter 11 administrative expenses, and at least a 20% dividend on nonpriority unsecured claims. In a chapter 7 liquidation, without a sale on the terms set forth in the Offer, chapter 11 administrative claims would not be paid in full and no distribution would be made on account of priority and nonpriority unsecured claims, unless the chapter 7 trustee were to recover sufficient amounts on claims against third parties that are property of the estate to make such distributions. If this chapter 7 case is dismissed, administrative and priority claimants would lose their priorities

---

[3] The Bernalillo County Treasurer filed a proofs of claims on July 7, 2015 claiming $156,965.43 in unpaid real property taxes and $10,220.06 in unpaid personal property taxes. NCG calculates the amount currently due as $260,794.

-6-

and would bear a significant risk of not being paid anything on their claims. Likewise, if this chapter 7 case is dismissed, holders of nonpriority unsecured claims would bear a significant risk of not being paid anything on their claims.

F.    Cause to Dismiss

There is no realistic prospect of confirmation of a plan under chapter 11 in this bankruptcy case. Cause exists to either dismiss or convert this chapter 11 case under 11 U.S.C. § 1112(b).

## Discussion

Conversion or dismissal of a chapter 11 case is governed by 11 U.S.C. § 1112(b)(1), which provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." Section 1112(b) establishes a two-step process for considering the question of conversion or dismissal. The Court "first determines whether there is 'cause' to convert or dismiss," and if cause is found, the Court considers whether "conversion or dismissal ... [is in the] best interest of creditors and the estate." *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3rd Cir.2012). All parties in interest agree that cause exists to either convert or dismiss this chapter 11 case. Debtor and NCG have stipulated that neither are able to confirm a plan in this chapter 11 case. Accordingly, the Court has determined that cause exists to either dismiss or convert this chapter 11 case under 11 U.S.C. § 1112(b).[4]

---

[4] Section 1112(b)(4) contains a nonexclusive list of grounds that constitute cause for conversion or dismissal. *In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir.1991) (noting that the list contained in Section 1112(b)(4) is nonexhaustive). While not specifically listed in Section 1112(b)(4), there is substantial support in the case law that inability to propose a confirmable plan constitutes cause under Section 1112. *See In re All Denominational New Church*, 268 B.R. 536, 538 (B.A.P. 8th Cir. 2001) ("Dismissal is proper under this subsection if the court determines that it is unreasonable to expect that a plan can be confirmed in the case." (citing *Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir.1994); *Windsor on the River Assocs. v. Balcor Real Estate Finance (In re Windsor on the River Assocs., Ltd.)*, 7 F.3d 127, 133 (8th Cir.1993)); In re BGNX, Inc., 76 B.R. 851, 852–53 (Bankr. S.D. Fla. 1987) (granting Section 1112(b) motion where there is no reasonable likelihood that a plan will be confirmed in the chapter 11 case); *In re Stapleton*, 55 B.R. 716, 722 (S.D. Ga. 1985) (upholding bankruptcy court's granting of Section 1112(b) motion where likelihood that a plan would be confirmed was remote).

The only criteria in the Bankruptcy Code for choosing between dismissal or conversion of a chapter 11 case upon a finding of cause, is whether conversion or dismissal in the "best interest of creditors and the estate." *See Lakefront Investors LLC v. Clarkson*, 484 B.R. 72, 82 (D. Md. 2012) (noting that "the Bankruptcy Code does not identify factors ... to consider when determining the remedy in the 'best interests of creditors and the estate'"). Case law provides guidance on this decision. The decision between conversion or dismissal falls within the sound discretion of the court. *See Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515 (8th Cir. 2004) ("The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case."). This Court has previously held, "[i]n evaluating the best interests of creditors and the estate, the Court consider[s] the practical impact of conversion on all parties involved." *In re Pettingill Enterprises, Inc.*, No. 11-12-10515 JA, 2013 WL 5350789, at *7 (Bankr. D.N.M. Sept. 23, 2013). Numerous courts have developed a non-exhaustive list of the factors courts may consider when deciding whether dismissal or conversion is in the best interest of creditors and the estate, which include:

> (1) whether some creditors received preferential payments, [and] whether equality of distribution would be better served by conversion rather than dismissal;
>
> (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
>
> (3) whether the debtor would simply file a further case upon dismissal;
>
> (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors;
>
> (5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise;
>
> (6) whether any remaining issues would be better resolved outside the bankruptcy forum;
>
> (7) whether the estate consists of a "single asset;"

-8-

(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

(9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and

(10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Pettingill*, 2013 WL 5350789, at *5 (quoting *In re Helmers*, 361 B.R. 190, 196-97 (Bankr. D. Kan. 2007)). *See also In re Veltmann*, 2007 WL 4191736 (Bankr. D.N.M. 2007) (applying the same factors); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (applying the same factors). The Court adds three additional factors that are not expressly contained in the first ten:

(11)    The prospect of payment of any unpaid secured claims, chapter 11 administrative claims, priority claims and nonpriority unsecured claims in a converted chapter 7 case or after dismissal;

(12)    Whether conversion to chapter 7 would result in bankruptcy powers and procedures being used to benefit secured creditors without providing a material benefit to other creditors; and

(13)    Any other prejudice to parties in interest resulting from conversion or dismissal.

The Court may also consider the preferences expressed by the parties in interest, especially neutral third-parties such as the United States Trustee. *See In re Ferri*, 2010 WL 1418147, *4 (Bankr. D.N.M. 2010); *In re Gollaher*, 2011 WL 6176074, * 4 (10th Cir. BAP 2011) ("Courts ... consider the preferences expressed by creditors for either dismissal or conversion as they are the best judge of their own best interests."); *In re Mazzocone*, 183 B.R. 402, 411–12 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) ("[W]here an interested party other than the debtor, particularly a completely neutral, "watchdog" party such as the USTE, feels strongly enough about the proper disposition of a bankruptcy case to move for its dismissal, we are even more strongly

-9-

inclined to dismiss a case than if only the debtor is pressing for this result.").  No factor is

necessarily determinative, and the court need not give the same weight to each factor.

Having considered the interests of all parties in interest as a whole, the Court has

determined that conversion of this chapter 11 case to a case under chapter 7 is in the best interest

of the estate and its creditors.  The preferences expressed by the parties in interest were mixed.

The Court considered the thirteen factors identified above and has concluded that the first, third,

fourth, fifth, seventh, eighth, ninth, and tenth factor are neutral.  As to the first factor, there no

evidence conversion or dismissal will alter the equality of distribution.  As to the third factor, there

is no strong evidence that the Debtor intends to file another bankruptcy case.  As to the fourth

factor, there is no reason to believe that there are assets of the estate that a chapter 7 trustee could

assist in reaching.  As to the fifth factor, neither conversion nor dismissal is likely to impact the

estate's value as an economic enterprise.  As to the seventh factor, the estate is not a "single asset."

As to the eighth factor, while creditors have alleged misconduct by the debtor, there is no

convincing evidence before the Court of any significant misconduct.  As to the ninth factor, no

plan has been confirmed.  As to the tenth factor, there are no environmental or safety concerns of

which the Court is aware.

The second and eleventh factors weigh significantly in favor of conversion.  As to the

second factor, there is a substantial amount of unpaid chapter 11 administrative expense claims.

If the case were dismissed, all holders of chapter 11 administrative expense claims would lose their

priority rights and their right to payment would be equal to all other unsecured creditors.  After

dismissal, there would be a substantial risk that chapter 11 administrative expenses would not be

paid.  As to the eleventh factor, there is a greater likelihood of payment of chapter 11 expenses

and to holders of priority and nonpriority unsecured claims in a converted chapter 7 case than after

-10-

dismissal. A neutral chapter 7 trustee could decide whether to accept the Offer, sell the estate's claims against third parties and other estate assets if a better price were offered, or pursue estate's claims. After dismissal, Debtor's only option would be to pursue the claims (if there are claims to pursue) because the Offer would not be an option after dismissal.

The twelfth factor weighs in favor of conversion. In exchange for a chapter 7 sale that would significantly aid NCG in realizing upon its collateral, NCG has offered to provide significant value to a chapter 7 trustee.

The sixth and thirteenth factors are mixed. Debtor asserts that its claims against NCG and others would be better resolved in a state court foreclosure proceeding after dismissal. Debtor argues that dismissal is in the best interest of the estate and its creditors because it, rather than a chapter 7 trustee, has the greatest motivation to pursue those claims for the benefit of the Debtor and its creditors, especially the claim against NCG. Debtor scheduled each of the claims as having an unknown value and has provided the Court no evidence on their value. If the claims are valuable, a chapter 7 trustee can assess their value and use that information when considering NCG's Offer and other options. The estate and its creditors will likely benefit from having a neutral third party evaluate the claims and pursue or sell them based on the best interest of the estate and creditors. Conversion would guard against the possibility of Debtor wasting its assets to pursue claims to avenge a perceived wrong irrespective of the impact on creditors.

NCG's Offer weighs heavily in the Court's evaluation of whether conversion or dismissal is in the best interest of the estate and creditors. The Offer gives a Chapter 7 Trustee an option (not available after dismissal) that could make this case administratively solvent, pay all tax claims, secured claims (excluding NCG's claim), and priority unsecured claims in full, and leave funds to

-11-

make a distribution of 20% or more on nonpriority unsecured claims. Dismissal provides no safety net.

## Conclusion

Based on the foregoing, the Court will enter an order converting this chapter 11 case to chapter 7.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 5, 2016

COPY TO:

Stephen CM Long
Suite A
8418 Washington St., N.E.
Albuquerque, NM 87113

Richard Leverick
Attorney for NCG, LLC
5120 San Francisco Rd NE
Albuquerque, NM 87109-4610

Leonard K Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103-0608

David S. Catuogno
LeClairRyan, P.C.
Attorney for Ramada Worldwide, Inc.
1037 Raymond Boulevard, 16th Floor
Newark, NJ 07102