UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SANDIA RESORTS, INC.,                          Case No. 15-11532 t11

    Debtor.

## **OPINION**

Before the Court is Harminder Sian's Emergency Motion to Reverse Sale by Trustee and Stay Proceedings Pending Appeal. Mr. Sian seeks to stop the sale of Debtor's hotel so he can pursue his appeal of the Court order granting the chapter 7 trustee's motion to sell the hotel free and clear of liens. After reviewing the motion and the bankruptcy docket, the Court concludes the motion fails to state grounds to reconsider the sale order or stay the case pending the appeal.

    I.      BACKGROUND AND PROCEDURAL HISTORY[1]

Mr. Sian is Debtor's President and sole shareholder.[2] He caused Debtor to file a chapter 11 petition on June 9, 2015. Debtor's main asset is an America's Best Value Inn in Albuquerque, New Mexico. The hotel was encumbered by a first mortgage loan originally from First National Bank of Santa Fe (the "Bank"), securing a debt of approximately $1,900,000.

---

[1] These facts are taken from the docket in this case, of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").
[2] Sian also filed a proof of claim on July 8, 2016 for $66,000.

Debtor had filed a previous chapter 11 case in 2011. The Court confirmed a plan of reorganization the following year, and the case was closed in December 2012. The confirmed plan reorganized Debtor's secured debt to the Bank.

Upon receiving notice of the current chapter 11 case, the Bank filed a motion to dismiss, arguing that Debtor could not restructure its secured debt twice. The Court (Hon. Robert Jacobvitz) agreed and dismissed the case on February 5, 2016.

Two weeks later, Debtor (through Mr. Sian) moved to reconsider the dismissal order. Debtor argued that the Bank had sold its loan to NCG, LLC, but had failed to disclose the sale and had prosecuted the motion to dismiss without the proper standing to do so. After a final hearing, the Court found that the Bank had, in fact, sold the loan to NCG before the 2015 case was filed. Based on this finding, on May 26, 2016, the Court set aside the dismissal order and reinstated the case.

Despite reinstatement, Debtor was unable to confirm a plan of reorganization. The United States Trustee's office filed a motion to dismiss or convert the case on November 16, 2016. On December 9, 2016 the Court converted the case to chapter 7. Philip Montoya was appointed the chapter 7 trustee (the "Trustee").[3]

On December 28, 2017, the Trustee filed a motion to sell the hotel and related assets to NCG. The purchase consideration consisted of a $550,000 cash payment to Debtor, plus forgiveness of the $1.9 million mortgage.

Mr. Sian objected, arguing that NCG's commitment to forgive $1.9 million in debt was worthless because the Bank, not NCG, held the note and mortgage. Mr. Sian asserted that when the Bank assigned the mortgage to NCG, the Bank had not recorded a power of attorney allowing

---

[3] The case was transferred to Hon. David T. Thuma shortly after conversion to chapter 7.

the signing officer to act on the Bank's behalf. Mr. Sian therefore argued the mortgage assignment was invalid and void under N.M.S.A. § 41-1-7 (requiring recordation of any power of attorney containing authority to convey real estate), and that the Bank (not NCG) owned the debt. Mr. Sian concluded that, given the assignment was invalid and the debt forgiveness was worthless, the proposed sales price was insufficient because the Trustee should be able to find a cash buyer who would pay more than $550,000.

The Court held a hearing on the sale motion on January 12, 2017 and overruled Mr. Sian's objection, for three reasons. First, N.M.S.A. § 41-1-7 governs situations where one party conveys property on behalf of the owner, generally acting through a power of attorney. The statute does not apply to corporate conveyances.

Second, even if NCG did not own the note and mortgage, the lien would nevertheless need to be satisfied as part of the sale to a third party, and it is unlikely a third party buyer would pay more than about $2,450,000 (i.e., the amount of the lien, plus $550,000 in cash) for the purchased assets.

Third, earlier in the case Sian caused Debtor to take the position that NCG, not the Bank, owned the loan at issue. It was based on this position that Judge Jacobvitz reinstated the case after dismissing it. In his objection to the sale motion, Mr. Sian reversed his stance and argued that the Bank owned the loan all along. The doctrine of judicial estoppel prevents such a diametric change in position.

By order entered January 18, 2017, doc. 367, the Court approved the sale free and clear of liens or interests pursuant to 11 U.S.C. § 363(f) (the "Sale Order"). The Trustee's report of sale reflects the sale closed on January 19, 2017. Mr. Sian filed the instant motion on February 3, 2017,

-3-
Case 15-11532-t7    Doc 404    Filed 03/21/17    Entered 03/21/17 13:37:11 Page 3 of 10

seeking reconsideration of the Sale Order and to stay its enforcement pending resolution of his appeal to the Tenth Circuit Bankruptcy Appellate Panel.

Mr. Sian did not properly prosecute the motion by requesting a hearing or sending notice of the objection deadline, as required by Local Rule 9013-1. Nevertheless, after reviewing the Motion and the bankruptcy docket, the Court determined it is appropriate to rule on the papers.

## II. DISCUSSION

A. Motion to Reconsider.

1. Rules 59(e) and 60(b). Depending on when the motion is filed and the type of relief sought, courts construe motions to reconsider under either Rule[4] 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011). Since Mr. Sian filed the Motion within 14 days after entry of the Sale Order, the Court will construe it as a motion to alter or amend pursuant to Rule 59(e), made applicable by Bankruptcy Rule 9023. *In re McCaull*, 2009 WL 185469, *3 (10th Cir. Jan. 26, 2009) (construing Debtor's motion to reconsider filed within the fourteen day period prescribed by Rule 9023 as a motion to alter or amend the judgment under Rule 59); *Buchanan v. Sherrill,* 51 F.3d 227, 230 n. 2 (10th Cir. 1995) ("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").

Grounds for relief under Rule 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995)). Reconsideration

---

[4] A Federal Rule of Civil Procedure.

may also be warranted when "the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination." *In re Sunflower Racing, Inc.,* 223 B.R. 222, 223 (D. Kan. 1998).

2. <u>No grounds to reconsider the Sale Order</u>. The Motion does not assert any grounds warranting reconsideration of the Sale Order under Rule 59(e). Mr. Sian has not identified any new issues, evidence, or law. Instead, he argues again that N.M.S.A. § 47-1-7 requires corporate officers to have and record a power of attorney before they can sign deeds and mortgages on behalf of their corporations. The argument has no merit. Section 47-1-7 provides:

> All powers of attorney or other writings containing authority to convey real estate, as agent or attorney of the owner of the same, or to execute, as agent for another, any conveyance of real estate, or by which real estate may be affected in law, or equity, shall be acknowledged, certified, filed and recorded, as other writings conveying or affecting real estate are required to be acknowledged. No such power of attorney, or other writing, filed and recorded in the manner prescribed in this section, shall be considered revoked by any act of the party executing the same, until the instrument of writing revoking the same, duly acknowledged and certified to, shall be filed for record and recorded in the office of the county clerk where said power of attorney or other writing is filed and recorded.

N.M.S.A. § 47-1-7.

The Court previously determined that, by its plain terms, § 47-1-7 applies when a third party conveys real estate on behalf of the owner, usually through a power of attorney. *See generally Miera v. Miera*, 25 N.M. 299 (N.M. 1919) (statute requires all writings containing authority to convey real estate as agent or attorney for the owner to be acknowledged and recorded). The statute does not apply to corporations conveying their own property through the actions of their officers.

Mr. Sian cites *Otero v. Buslee*, 695 F.2d 1244 (10th Cir. 1982), in support of his argument that the Bank's vice president could not assign the mortgage to NCG because she did not have a recorded power of attorney authorizing her to do so. *Otero* does not support Mr. Sian's position.

Rather, *Otero* stands for the unremarkable position that, if a wife grants her husband a power of attorney to sign a contract to sell land held in joint tenancy, the power of attorney must be recorded. 695 F.2d at 1248. Here, the bank officer did not act through a power of attorney, but by rights granted under applicable corporate statutes. *See, e.g.*, N.M.S.A. § 53-11-3(E) (corporations have the right to convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property or assets), and 53-11-48 (all officers have the authority to manage the corporation as provided in the bylaws or as determined by resolution of the board of directors). *See also* N.M.S.A. § 53-11-6 (giving the general rule that a corporation cannot act *ultra vires*).[5]

It is worth noting that even if the assignment in question were defective (it is not), the general rule in New Mexico and elsewhere is that a mortgage "follows" the promissory note it secures, so a subsequent holder of a note can enforce a mortgage securing payment even without a formal assignment of the mortgage. *See In re Sandford*, 2012 WL 6012785, at *5 (Bankr. D.N.M.) (citing cases).

Mr. Sian also failed to show that the purchase price was too low. He argued at the hearing that he knew of buyers who would pay more than $550,000 (*i.e,* the cash consideration). However, using $550,000 as a baseline ignores the fact that the $1.9 million mortgage lien would need to be satisfied regardless of who owned the loan. Mr. Sian did not assert he knew of buyers willing to pay more than $2,450,000, so the Court is not inclined reconsider its ruling on the adequacy of the purchase price. *See generally In re Meill,* 441 B.R. 610, 616 (8th Cir. BAP 2010) (bankruptcy courts have wide discretion with respect to sale of assets of a bankruptcy estate); *In re JL Building, LLC,* 452 B.R. 854, 859 (Bankr. D. Utah 2011) (approved a proposed sale because, inter alia, the

---

[5] There is no evidence in the record whether the Bank is a New Mexico corporation, so the New Mexico corporate statute is cited for general reference purposes only.

court had not been furnished with sufficient evidence or reasons to challenge the business judgment of the trustee). Again, the Court overrules Mr. Sian's weak argument that the first mortgage loan is worthless because the mortgage assignment was defective. Whether it is the Bank or NCG, someone owns the loan, and must be paid in full.

Finally, Mr. Sian gives no reason why the Court should reconsider its ruling that he is estopped from asserting that NCG does not own the loan. *See Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1069 (10th Cir. 2005) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . ."); *Coll v. BNSF Railway Co.*, 2013 WL 12085145, at *4 (D.N.M.) ("Under federal law, the doctrine of judicial estoppel is designed to protect the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment"); *In re Tres Hermanos Dairy, LLC*, 2014 WL 176772, at *7 (Bankr. D.N.M.) ("The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment .... [and] to prevent improper use of judicial machinery").

The Court is not persuaded to disturb its earlier ruling, in part because the motion to reconsider fails on the merits, and in part because such motions cannot be used to rehash old arguments. *See Coker v. Ball Janitor Service, Inc.,* 208 F.3d 225 (10th Cir. 2000) (the trial court will not abuse its discretion in denying a motion to alter or amend that rehashes previously rejected arguments). Mr. Sian's request for reconsideration must be denied.

B.  Motion for Stay Pending Appeal.

Mr. Sian asks for a stay pending appeal, pursuant to Bankruptcy Rule[6] 8005.

1.  Factors to consider. Bankruptcy Rule 8005 allows the bankruptcy court to issue a stay pending appeal. Factors to consider include: "(1) whether the stay applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770 (1987)). Factors one and two -- likelihood of success[7] and irreparable harm -- are the most critical. *Nken,* 556 U.S. at 434 (explaining that "[t]he first two factors of the traditional standard are the most critical."). Mr. Sian, as the movant, has the burden of demonstrating the factors weigh in his favor. *Securities Investor Protection Corp. v. Blinder, Robinson & Co. Inc.*, 962 F.2d 960, 968 (10th Cir. 1992) (denial of stay was proper where movant failed to making a showing of likely success, harm, etc.).

As an initial matter, it is not clear whether there is anything to stay under the circumstances. The sale closed on January 19, 2017, several weeks before the Motion was filed. Ordinarily, § 363 sale orders are stayed for 14 days by virtue of Bankruptcy Rule 6004(h). However, the Court may waive the stay to facilitate a quick closing based on the needs of the case. *Id.* The Trustee

---

[6] A Federal Rule of Bankruptcy Procedure.
[7] If the moving party establishes that the other three factors "tip decidedly in its favor," the "likelihood of success" factor for obtaining a stay pending appeal is "somewhat relaxed." *F.T.C. v. Mainstream Mktg. Services., Inc.*, 345 F. 3d 850, 852 (10th Cir. 2003). Under the relaxed standard, the movant can satisfy the "likelihood of success" requirement by showing that "questions going to the merits [are] so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id.* at 853 (internal quotations omitted). Because Mr. Sian failed to demonstrate that most of the other factors tip in his favor, the Court need not apply this more relaxed standard to the likelihood of success requirement.

requested such a waiver in the sale motion, and no one objected. The Sale Order therefore waived the stay, which arguably renders Mr. Sian's post-closing request moot.

2. None of the factors favor a stay. Even if a stay could issue, however, none of the factors cited above favor Mr. Sian. First, he is unlikely to succeed on the merits, as there were three independent grounds for overruling his objection to the sale. Second, the appeal may be moot because the sale has already closed. *In re Crowder,* 314 B.R. 445, 448-9 (10th Cir. BAP 2004) ("[I]n most cases, § 363(m) renders the appeal of a [§ 363(f) sale] moot if the appellant fails to obtain a stay [of the sale] pending appeal…").

Third, Mr. Sian has not identified what injury, if any, he would suffer absent a stay. He is presumably upset that his company no longer owns the Hotel, but the appointment of a trustee and the sale of corporate assets is a risk and reality in many bankruptcy cases. On the other hand, granting a stay would injure the Trustee, NCG, and other creditors. An appeal could take over a year, preventing distribution of the sale proceeds. The ownership, management, and maintenance responsibilities of the Hotel may also become a point of contention during the appeal.

Finally, the public interest in upholding the integrity of judicial sales and paying creditors outweighs any interest an out-of-possession principal has in retaining control over the debtor's assets. Mr. Sian's request for a stay must be denied.

### III. CONCLUSION

The Motion focuses entirely on legal arguments the Court previously overruled. Mr. Sian has not demonstrated grounds for reconsideration, or for a stay pending appeal. A separate order denying the Motion will be entered.

_____

Honorable David T. Thuma
United States Bankruptcy Judge

Entered: March 21, 2017

Copies to:

Richard Leverick
5120 San Francisco Rd NE
Albuquerque, NM 87109-4610

James Jacobsen
201 Third Street Suite 300
Albuquerque, NM 87102

Samuel Roybal
500 Marquette, NW, Ste. 650
Albuquerque, NM 87102

Harminder Sian
P.O. Box 50591
Albuquerque, NM 87181